# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| TARIQ AYYUB, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No.  SA-10-CV-149-XR |
| § | |
| WILEY BLAKEWAY, Director, § | |
| San Antonio Field Office, § | |
| U.S. Citizenship & Immigration Services; § | |
| JANET NAPOLITANO, Secretary, § | |
| U.S. Department of Homeland Security; § | |
| ERIC HOLDER, Attorney General; and § | |
| ROBERT S. MUELLER, Director, § | |
| Federal Bureau of Investigation § | |
| § | |
| *Defendants*. § | |

## ORDER ON MOTION TO DISMISS

On this date, the Court considered Defendants' motion to dismiss (Docket Entry No. 9). Having considered Defendant's motion to dismiss and reply and Plaintiff's complaint and response, the motion is GRANTED.

## Background

Plaintiff Tariq Ayyub, a native and citizen of Pakistan, has been a lawful permanent resident of the United States since July 9, 2003, based on his marriage to a United States citizen.[1]  On April 22, 2008, Ayyub applied to become a naturalized citizen of the United States pursuant to 8 U.S.C. § 1427.[2]  Ayuub was initially scheduled for an interview regarding his application in October 2008, but that interview was then "descheduled" by the United States Customs and Immigration Services

---

[1] Pl.'s Orig. Pet. 1, Feb. 12, 2010 (Docket Entry No. 1) ("Compl.").

[2] U.S. Dep't of Homeland Security, N400 Application for Naturalization (Apr. 28, 2008).

("USCIS"). The USCIS has not scheduled an in-person interview and examination of the Plaintiff, a subsequent step in the naturalization process, because it is awaiting the results of the Federal Bureau of Investigation ("FBI") background and name check investigation.

Plaintiff filed this suit on February 19, 2010, nearly twenty-two months since he applied to become a naturalized citizen. Ayuub contends that the Defendants have improperly withheld action on his naturalization application. He argues that the delay in processing his name check, which now totals nearly two years, is unreasonable. Plaintiff states that he has contacted USCIS to inquire about the status of his application but has been told each time that his case is pending. Ayyub alleges that the Defendants have made no showing that they have exercised due diligence in adjudicating his application. In this suit, Ayyub asks this Court to require the Defendants to adjudicate his application within 30 days. Ayyub sued the San Antonio Field Office Director of the USCIS, the FBI director, the Secretary of Homeland Security, and the United States Attorney General, asserting a claim pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. 555(b), 706(1), 706(2)(A), 706(2)(C), 706(2)(D).[3] The Plaintiff also seeks a declaration that the Defendants' actions are unlawful and requests an award of reasonable attorneys fees.

## Procedural History

The Defendants move to dismiss the Plaintiff's claims for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.[4] They further move the Court to

---

[3] Plaintiff invokes 28 U.S.C. § 1331; the Administrative Procedure Act, 5 U.S.C. § 702; and the Mandamus Act, 28 U.S.C. § 1361, as the basis for the Court's jurisdiction and then states that relief is requested pursuant to the statute. Plaintiff then asserts a single claim for an unreasonable delay in violation of the Administrative Procedures Act and not the Mandamus Act.

[4] Def.'s Mot. to Dismiss, May 7, 2010 (Docket entry No. 9) ("Mot.").

dismiss the case under Rule 12(b)(6), arguing that the Plaintiff failed to state a claim upon which relief can be granted. The Defendants argue that the Plaintiff has no constitutional right to be naturalized and cannot show that he meets the statutory requirement since his background investigation is not complete on May 7, 2010. Plaintiff responded, arguing that the Defendants have a non-discretionary duty to adjudicate the naturalization application filed over two years ago.[5] The Plaintiff further argues that he stated a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1331, 1336 and the APA. Defendants replied, reiterating their arguments that the Court lacks jurisdiction and that Plaintiff fails to state a claim.[6]

## Legal Standard

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may seek dismissal of an action for lack of subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). The burden of establishing subject matter jurisdiction rests on the party seeking to invoke it. *Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002). When a Rule 12(b)(1) motion is accompanied by supporting evidence, a Rule 12(b)(1) motion challenging the Court's jurisdiction is a "factual attack." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981). A Plaintiff responding to a factual attack on the court's jurisdiction generally bears the burden of proving by a preponderance of the evidence that the court indeed possesses subject matter jurisdiction. *Id.* As this is a motion to dismiss, this Court must accept all facts put forth in the Plaintiff's complaint as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

---

[5] Pl's Reply in Opposition to Def's Mot. to Dismiss, May 27, 2010 (Docket Entry No. 10) ("Resp."). Plaintiff's motion was filed beyond the deadline to respond but was granted leave. Defendants' motion to strike was denied.

[6] Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss, Jun. 21, 2010 (Docket Entry No. 14).

If a complaint fails to state a claim upon which relief can be granted, a court is entitled to dismiss the complaint as a matter of law. FED. R. CIV. P. 12(b)(6). In considering a motion to dismiss for failure to state a claim, all factual allegations from the complaint should be taken as true. *Fernandez-Montez v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Additionally, the facts are construed favorably to the plaintiff. *Id*. Courts may look only to the pleadings in determining whether a plaintiff has adequately stated a claim; consideration of information outside the pleading converts the motion to one for summary judgment. FED. R. CIV. P. 12(d). To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The plaintiff must plead facts sufficient to "state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, -- U.S. ----, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

## Analysis

**A. The Naturalization Process**

The naturalization process consists of the following steps. First, the applicant files a Form N-400 with the USCIS. 8 C.F.R. § 334.2(a)[7]; *see also* 28 U.S.C. § 1445. Second, the USCIS must then conduct an investigation of the applicant, which requires a background check that includes

---

[7] The regulation reads: "An applicant may file an application for naturalization by filing a completed Form N-400 signed in the applicant's own handwriting, if physically able to do so, and by including any other documents required by parts 316, 319, 324, 325, 327, 328, 329, and 330 of this chapter, as appropriate." 8 C.F.R. § 334.2(a).

evaluation by the Federal Bureau of Investigation.[8] *Id.* § 335.1; *see also* 8 U.S.C. § 1446; 8 C.F.R. § 335.2(b). Third, the applicant must also appear in person before a USCIS officer for an "examination," which is an in-person interview.[9] 8 C.F.R. § 335.2(a). Fourth, the USCIS makes its ultimate decision within 120 days of the in-person interview and examination.[10] 8 C.F.R. § 335.3(a). Finally, if the application is granted, the applicant is administered an oath of allegiance at which time

---

[8] The regulation lists the requirements of the investigation at Step 2.
> Subsequent to the filing of an application for naturalization, the Service shall conduct an investigation of the applicant. The investigation shall consist, at a minimum, of a review of all pertinent records, police department checks, and a neighborhood investigation in the vicinities where the applicant has resided and has been employed, or engaged in business, for at least the five years immediately preceding the filing of the application. The district director may waive the neighborhood investigation of the applicant provided for in this paragraph.

8 C.F.R. § 335.1. Step three of the naturalization process is premised upon the USCIS receiving the results of an investigation from the FBI. According to the regulation: "[Step 3 of the process will occur] only after the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed." *Id.* § 335.2(b).

[9] The regulation reads: "Subsequent to the filing of an application for naturalization, each applicant shall appear in person before a Service officer designated to conduct examinations pursuant to Sec. 332.1 of this chapter. . . ." 8 C.F.R. § 335.2(a). Criminal background checks should be completed prior to the interview. *Id.* § 335.2(b).

[10] The regulation reads:
> The Service officer shall grant the application if the applicant has complied with all requirements for naturalization under this chapter. A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under Sec. 335.2. The applicant shall be notified that the application has been granted or denied . . . .

8 C.F.R. § 335.3(a). If the USCIS does not make a determination within 120 days of the interview, the applicant may file suit in federal court. 8 U.S.C. § 1447.

the applicant is deemed "a citizen of the United States".[11]  8 C.F.R. § 337.1; 8 C.F.R. 337.9.

Ayyub's application is at the second step of the process.  The USCIS and FBI have yet to complete the background investigation.  As a result, Ayyub has yet to be interviewed by USCIS.

## B. Plaintiff's Claims Under the Mandamus Act

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff."  8 U.S.C. § 1361.  Mandamus is an "extraordinary remedy" and it is used "only to compel the performance of a clear nondiscretionary duty." *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121, 109 S. Ct. 414, 102 L. Ed. 2d 408 (1988). Mandamus relief is available only if a Plaintiff establishes "(1) a clear right to relief, (2) a clear duty by the respondent to do the act requested, and (3) the lack of any other adequate remedy." *Davis v. Fechtel*, 150 F.3d 486, 487 (5th Cir. 1998) (citing *In re Stone*, 118 F.3d 1032, 1034 (5th Cir. 1997)).

The Plaintiff contends that the duty to adjudicate a naturalization application is not

---

[11] The regulation reads in part:
> Except as otherwise provided in the Act and after receiving notice from the district director that such applicant is eligible for naturalization pursuant to Sec. 335.3 of this chapter, an applicant for naturalization shall, before being admitted to citizenship, take in a public ceremony held within the United States the following oath of allegiance: [oath]

8 C.F.R. § 337.1(a)
It continues:
> An applicant for naturalization shall be deemed a citizen of the United States as of the date on which the applicant takes the prescribed oath of allegiance, administered either by the Service or an Immigration Judge in an administrative ceremony or in a ceremony conducted by an appropriate court under Sec. 337.8 of this chapter.

*Id.* § 337.9(a).

discretionary. Specifically, he cites 8 U.S.C. § 1421(c), which applies to judicial review of denial determinations on applications for naturalization.[12] However, this is not a case in which the application for naturalization was denied. Here, the application is still pending. Thus, 8 U.S.C § 1421(c) is not applicable to this case.

The specific delay in this case is the FBI's completion of Ayyub's name check. Plaintiff has, however, failed to allege that he is entitled to any clear right to relief and a clear duty by the respondent to do the act requested.[13]

This leaves Plaintiff's claim against the FBI. However, Ayyub is still unable to show that judicial action is available under the Mandamus Act because he does not establish a clear right to relief. It is undisputed that the name check is required in order for his application to be adjudicated. The FBI is not compelled to conduct that investigation within a certain period of time. In a relatively recent opinion, the United States District Court for the Southern District of Texas analyzed the FBI's role in performing name and background checks. The Court wrote:

---

[12] Resp. at 7. Section 1421(c) of Title 8 reads:
> A person whose application for naturalization under this subchapter is denied, *after a hearing before an immigration officer* under section 1447(a) of this title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1821(c)(emphasis added).

[13] The FBI background is separate from and independent of the USCIS examination (*i.e.*, the USCIS interview). *See Walji*, 500F.3d 432, 437(5th Cir. 2007). The Fifth Circuit has stated: "But because there is currently no required period of time for CIS to conduct the initial interview, CIS could avoid the jurisdiction of the courts by following its own order of events. As a practical matter, this may yet result in long waiting time for applicants." *Id.* at 439.

7

> No statute or regulation imposes a duty on the FBI to conduct name checks in connection with naturalization applications. Although various statutes and regulations refer to the FBI's role in conducting name checks, the only mandatory language is directed toward the USCIS. Under 8 C.F.R. § 335.2(b) the USCIS may interview an applicant "only after [it] has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed." 8 C.F.R. § 335.2(b). The 1998 Appropriations Act prohibits the USCIS from adjudicating immigrants' applications for naturalization until FBI background checks are completed: "[N]one of the funds appropriated or otherwise made available to [the USCIS] shall be used to complete adjudication of an application for naturalization unless [the USCIS] has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed." The FBI is authorized by statute to collect fees for conducting name checks on another agency's behalf and the USCIS pays the FBI for name checks out of the fees the USCIS collects from applicants behalf. But none of these provisions directs the FBI to conduct name checks and none imposes a time limit on the FBI for doing so.

*Sawan v. Chertoff*, 589 F. Supp. 2d 817, 826 (S.D. Tex. 2008). Consequently, Ayyub is unable to establish a claim for relief pursuant to the Mandamus Act.

**C. The Administrative Procedure Act**

Ayyub primarily seeks review under the APA, 5 U.S.C. § 706(1). Pursuant to the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA authorizes a federal court to "compel agency action unlawfully held or unreasonably delayed." 5 U.S.C. § 706(1). A claim for an agency's failure to act can proceed "only where a plaintiff asserts than an agency failed to take a *discrete* agency action that it is *required* to take." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62, 124 S. Ct. 2373, 159 L. Ed. 2d 137 (2004). The APA does not apply to the extent that "agency action is committed to agency discretion

by law." *Bian v. Clinton*, 605 F.3d 249, 255 (5th Cir. 2010) (citing 5 U.S.C. § 701(a)(1)–(2)). The Plaintiff argues that the delay in processing his name check, which now totals two years, is unreasonable for purposes of the APA § 706(1).[14]

USCIS has express statutory authority and regulatory duties to process naturalization applications. Section 1446(d) of Title 8 states that USCIS "shall make a determination as to whether the application [for naturalization] should be granted or denied, with reasons therefor." 8 U.S.C. § 1446.[15] While the USCIS has discretion to either grant or deny an application for naturalization, the plain language of the statute and regulations do not provide the agency with discretion to make a determination or not make a determination. *See id.* The determination is a discrete act, *see Walji v. Gonzalez*, 500 F.3d at 435–39 (5th Cir. 2007), and it is required by law, *see* 8 U.S.C. § 1446. Pursuant to the APA, the USCIS cannot "unlawfully withh[o]ld or unreasonably delay[]" that determination. 5 U.S.C. § 555(b). The Court is authorized to "compel action unlawfully withheld or unreasonably delayed." *Id.* § 706(1). The Court determines that it has jurisdiction to consider a claim that the USCIS is refusing to adjudicate a plaintiff's application, and while this is what Plaintiff requests, it does not complete the Court's analysis of this case.[16]

---

[14] Pl.'s Reply in Opp'n to Def.'s Mot. to Dismiss, May 27, 2010.

[15] The Code of Federal Regulations specify the actions that the USCIS is required to follow to fulfill its duties under the statute. *See* 8 C.F.R. § 316.14 (2010) (The USCIS "shall determine whether to grant or deny the application, and shall provide reasons for the determination, as required under section 335(d) of the Act."); *see also id.* § 335.1 (regarding investigation of an applicant); *id.* § 335.2 (regarding the examination of an applicant); *id.* § 335.3 (regarding determination on application and continuance of examination).

[16] Defendants rely on *Walji v. Gonzales*, 500 F.3d 432 (5th Cir. 2007), for the proposition that the Court does not have jurisdiction to adjudicate Plaintiff's claim when the USCIS follows the procedure outlined in the Code of Federal Regulations and conducts its in-person interview with an

Plaintiff's application is not ready to be adjudicated; therefore, this Court cannot grant Plaintiff the relief he seeks, namely, to require Defendants "to adjudicate Plaintiff's application within 30 days." Section 335.2 of Title 8 of the Code of Federal Regulations states that the USCIS will schedule an interview with the naturalization applicant "only after the [USCIS] has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed." 8 C.F.R. § 335.2. In *Walji v. Gonzales*, the Fifth Circuit stated:

> The regulations provide that the examination is to be conducted *only after the FBI has provided a "definitive response that a full criminal background check of the applicant has been completed"* by confirming (1) the applicant has no administrative or criminal record, (2) the applicant has an administrative or criminal record, or (3) the FBI cannot definitively respond because the necessary fingerprints analysis cannot be completed on the available information.

500 F.3d at 434 (citing 8 C.F.R. § 335.2(b)(1)–(3)) (emphasis added). The USCIS must wait until the FBI completes its background and name check investigation before interviewing and examining the applicant. *Id.* (quoting 8 C.F.R. § 335.2(b)). In his complaint, Ayyub states that Defendants Secretary Napolitano and Field Director Blakeway have failed "to adjudicate the application for naturalization properly filed by Plaintiff . . . ."[17] The regulation, however, precludes the USCIS from scheduling an interview until it receives "a *definitive* response from the Federal Bureau of

---

applicant upon receiving the "definitive response" from the FBI. The Court notes that the issue before the Fifth Circuit involved an applicant's ability to seek judicial relief pursuant to 8 U.S.C. § 1447(b), which authorizes judicial review if USCIS does not issue a decision within 120 days of interview. Unlike the applicant in *Walji*, Ayyub seeks redress pursuant to the APA, claiming that adjudication of his application has been unreasonably delayed.

[17] Compl. ¶ 11.

10

Investigation . . . ." 8 C.F.R. § 335.2(b).[18]

In its motion to dismiss, the Government provided the declaration of Defendant Albert W. Blakeway, Field Office Director of the USCIS San Antonio Field Office. In his declaration, he explains that the USCIS conducts several forms of security and background checks as part of its investigation of an applicant. Mr. Blakeway states that "[i]n addition to records checks against DHS'[s] own immigration systems, these background checks currently include (a) a Federal Bureau of Investigation (FBI) fingerprint check for relevant criminal history records . . . ; (b) a check against the DHS-managed Interagency Border Inspection System . . . ; and (c) an FBI name check . . . ." In general terms, Blakeway declares that the three security checks sometimes raise issues regarding an applicant's eligibility and that his security and background checks remain pending. He further notes that the terrorist attacks of 2001 have forced the agency to conduct "more rigorous and thorough" background checks. More importantly, Blakeway states that "Mr. Ayyub's security and background checks remain pending." So long as the USCIS and FBI are engaged in the process of investigating Ayyub's application, this Court does not have jurisdiction to order the USCIS to adjudicate Plaintiff's application at this time.

Plaintiff's ultimate goal is to have his claim adjudicated. While the Court does not have

---

[18] The regulation specifies items that constitute a "definitive response:"
    (1) Confirmation from the Federal Bureau of Investigation that an applicant does not have an administrative or a criminal record; or
    (2) Confirmation from the Federal Bureau of Investigation that an applicant has an administrative or a criminal record; or
    (3) Confirmation from the Federal Bureau of Investigation that two properly prepared fingerprint cards (Form FD-258) have been determined unclassifiable for the purpose of conducting a criminal background check and have been rejected.
8 C.F.R. § 335.2(b)

jurisdiction to order the adjudication of Plaintiff's application, the Court has jurisdiction over a claim to have the USCIS and FBI conduct an investigation that they are failing to conduct.[19] To determine if the Court has jurisdiction under the APA, the Court must look to the regulations regarding the naturalization process. The Court interprets regulations in the same manner it interprets statutes. *Anthony v. United States*, 520 F.3d 374, 380 (5th Cir. 2008). The Court will look first at the plain language of the regulation. *Id.* (citing *Lara*, 207 F.3d at 787). If the language is "unambiguous, [the Court does] not look beyond the plain wording of the regulation to determine meaning." *Id.* (citing *Copeland v. Comm'r*, 290 F.3d 326, 332–33 (5th Cir. 2002)). "A 'regulation should be interpreted in a manner that effectuates its central purposes.'" *Id.* (quoting *Jochum v. Pico Credit Corp. of Westbank, Inc.*, 730 F.2d 1041, 1047 (5th Cir. 1984)).

The language of the regulations governing the investigation of an applicant by the USCIS is clear. Section 335.1 of Title 8 of the Code of Federal Regulations reads:

> Subsequent to the filing of an application for naturalization, the Service *shall* conduct an investigation of the applicant. The investigation *shall* consist, at a minimum, of a review of all pertinent records, police department checks, and a neighborhood investigation in the vicinities where the applicant has resided and has been employed, or engaged in business, for at least the five years immediately preceding the filing of the application.

8 C.F.R. § 335.1. Based on the language of the regulation, the USCIS has an enforceable duty to investigate the applicant. The regulation states that the USCIS "shall" conduct an investigation and it continues to list the minimum requirements of an investigation. 8 C.F.R. § 335.1

---

[19] The Court recognizes that the completion of the investigation would then place the USCIS in a position to adjudicate Plaintiff's application.

Likewise, the FBI has an enforceable duty to conduct background checks. Although the regulation does not provide an explicit directive to the FBI, the FBI must conduct a portion of the investigation to effectuate the central purpose of the regulation. The regulation in question reads as follows:

> The Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application only after the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed. A definitive response that a full criminal background check on an applicant has been completed includes:
>
> (1) Confirmation from the Federal Bureau of Investigation that an applicant does not have an administrative or a criminal record;
>
> (2) Confirmation from the Federal Bureau of Investigation that an applicant has an administrative or a criminal record; or
>
> (3) Confirmation from the Federal Bureau of Investigation that two properly prepared fingerprint cards (Form FD-258) have been determined unclassifiable for the purpose of conducting a criminal background check and have been rejected.

8 C.F.R. § 335.2.

The regulations premise the ability of the USCIS to conduct a required interview upon the receipt of a "definitive response from the Federal Bureau of Investigation." *Id.* § 335.2(b). If the regulation were interpreted to provide the FBI with the discretion to conduct background checks, it would circumvent the ability of the USCIS to adjudicate naturalization applications as required by statute and regulations. *See* 8 U.S.C. § 1446 (requiring Attorney General—and now the Secretary of Homeland Security—to designate employees of the USCIS to conduct examinations upon applications for naturalization). In this case, the regulation specifically identifies the Federal Bureau of Investigation, states that USCIS can schedule an interview only after receiving "a definitive

response" from the FBI, and outlines the requirements of a "definitive response," each of which requires FBI confirmation. *See Dawoud v. Dep't of Homeland Sec.*, No. 3:06-CV-1730, 2007 WL 4547863, at *6–7 (N.D. Tex. Dec. 26, 2007). *But see Sawan v. Chertoff*, 589 F. Supp. 2d at 826–28 (stating that FBI is not demanded by law to conduct name check). The FBI is therefore required to conduct a portion of the investigation.

While the Court has jurisdiction, Plaintiff has not pled facts to establish a claim for relief. Plaintiff cannot establish a claim against the USCIS because the agency is currently awaiting a definitive response from the FBI and must obtain it before pursuing its own investigation.[20] The Court notes that it does not have the authority to dictate the speed at which the FBI and USCIS are to conduct an investigation so long as the agencies are conducting the investigation in accordance with their procedures. Ayyub alleges no improper motive as the basis for the delay. Based on the allegations in Plaintiff's complaint, the Court is unable to provide relief.[21]

## Conclusion

Defendant's motion to dismiss is GRANTED. Plaintiff's claims for relief pursuant to the Mandamus Act, Administrative Procedures Act, and Declaratory Judgment Act are DISMISSED.

---

[20] *Cf. Orlov v. Howard*, 523 F. Supp. 2d 30, 35 (D.D.C. 2007) (stating that pace of processing and adjustment application is up to the discretion of USCIS). The record before the Court is incomplete in that the motion does not contain an affidavit from a representative of the FBI acknowledging that Mr. Ayyub's application is before it.

[21] In the Complaint, the Plaintiff seeks a declaration that the Defendants failure to adjudicate his application in a timely manner is unlawful. "Unless the request for declaratory relief is tied to another cause of action within the jurisdiction of the federal court, it must be dismissed." *Montero v. Davis*, 283 F. App'x 206, 207 (5th Cir. 2008) (citing *Earnest v. Lowentritt*, 690 F.2d 1198, 1203 (5th Cir. 1982)). Because Plaintiff cannot state a claim for relief under the Mandamus Act or the APA, his claim for declaratory relief is not tied to another cause of action. Consequently, his claim for declaratory relief is dismissed.

It is so ORDERED.

SIGNED this 13th day of August, 2010.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE